UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONNIE BOVEN, JR.,

               Plaintiff,                                             Hon. Janet T. Neff

v.                                                        Case No. 1:11-CV-950

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

_____/

## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim

for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and

XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative

record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall

be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges

to submit proposed findings of fact and recommendations for disposition of social security appeals,

the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

2

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 32 years of age on his alleged onset date and 35 years of age on the date of the ALJ's decision. (Tr. 23, 106). He possesses an eighth grade education and worked previously as a kitchen helper/dishwasher and bench assembler. (Tr. 21, 162, 165).

Plaintiff applied for benefits on December 13, 2007, alleging that he had been disabled since March 8, 2007, due to bi-polar disorder. (Tr. 106-11, 161). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 49-105). On May 19, 2010, Plaintiff appeared before ALJ Denise Martin, with testimony offered by Plaintiff and vocational expert, Joanne Pfeffer. (Tr. 28-48). In a written decision dated July 16, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 13-23). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this pro se appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2006. (Tr. 13). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

3

## RELEVANT MEDICAL HISTORY

On December 5, 2003, Plaintiff was examined by Dr. Sven Zethelius. (Tr. 225). Plaintiff reported that he began receiving treatment for "a major mood disorder" while in prison and wished to continue treatment now that he was no longer incarcerated. (Tr. 225). Dr. Zethelius modified Plaintiff's medication regimen. (Tr. 225). Treatment notes dated March 19, 2004, indicate that Dr. Zethelius again modified Plaintiff's medication regiment. (Tr. 221-22). Treatment notes dated April 30, 2004, indicate that Plaintiff was responding to his medication. (Tr. 220). Treatment notes dated December 14, 2004, indicate that Plaintiff's "episodes of anxiety are better" and that "he is sleeping well" and "his mood is stable." (Tr. 217). Treatment notes dated July 26, 2005, indicate that Plaintiff continues to use alcohol and marijuana. (Tr. 214).

On February 21, 2006, Plaintiff was examined by Dr. Zethelius. (Tr. 205-06). Plaintiff reported that his mood was "largely stable" on his current medication regimen. (Tr. 205). Plaintiff also reported that "he no longer drinks or smokes marijuana" and was off probation. (Tr. 205). The doctor observed that Plaintiff was "logical, rational and coherent" and that "his affect, speech and behavior are properly modulated." (Tr. 205). With respect to Plaintiff's medication regimen, the doctor also noted that "there are no clinical symptoms of toxicity or adverse side effects." (Tr. 205).

On January 11, 2008, Plaintiff completed a report concerning his activities. (Tr. 175-82). Plaintiff reported that on a typical day he watches television, walks in the woods, and drives around listening to music. (Tr. 175). Plaintiff reported that he cares for and spends time with his cat. (Tr. 176). Plaintiff reported that he mows the lawn, washes laundry, prepares meals, and shops for groceries. (Tr. 177-78). Plaintiff also reported that he regularly reads and rides motorcycles and

4

four-wheelers.  (Tr. 179).  Plaintiff also reported that he talks on the telephone "every day."  (Tr. 179).

On April 12, 2008, Plaintiff participated in a consultive examination conducted by Tim Strang, PhD.  (Tr. 228-31).  Plaintiff reported that he was unable to work due to difficulties dealing with stress and anxiety.  (Tr. 228).  Plaintiff reported that his prescribed medication "doesn't help" his symptoms.  (Tr. 228).  Plaintiff also reported that "he drinks alcohol to stop the panic attacks and help him interact peacefully with others."  (Tr. 228).  Plaintiff reported that "he has been convicted of six or seven DUIs and has spent time in prison" and, moreover, "has probation violations for giving positive alcohol and drug tests."  (Tr. 229).  The results of a mental status examination were unremarkable.  (Tr. 230-31).  Plaintiff was diagnosed with: (1) bipolar disorder; (2) adult antisocial behavior; (3) social phobia; (4) alcohol dependence; and (5) nicotine dependence. (Tr. 231).  Plaintiff's GAF score was rated as 50.[1]  (Tr. 231).

On April 16, 2008, Dr. Weicher van Houten completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations.  (Tr. 236-49).  Determining that Plaintiff suffered from bi-polar disorder, social phobia, adult anti-social behavior, and alcohol dependence, the doctor concluded that Plaintiff satisfied the Part A criteria for Sections 12.04 (Affective Disorders), 12.06 (Anxiety-Related Disorders), 12.08 (Personality Disorders), and 12.09 (Substance Addiction Disorders) of the Listing of Impairments.  (Tr. 237-45).  The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular Listings.  (Tr. 246).

---

[1]   The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV).  A GAF score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning."  DSM-IV at 34.

5

Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of deterioration or decompensation in work or work-like settings.  (Tr. 246).

Dr. van Houten also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation.  (Tr. 232-35).  Plaintiff's abilities were characterized as "moderately limited" in five categories.  (Tr. 232-33).  In 14 other categories, the doctor reported that Plaintiff was either "not significantly limited" or that there existed "no evidence of limitation in this category."  (Tr. 232-33).  The doctor did not rate Plaintiff's ability "to set realistic goals or make plans independently of others."  (Tr. 233).

On June 17, 2008, Plaintiff was examined by Dr. Zethelius.  (Tr. 263-64).  Plaintiff reported that he recently had "been drinking to the point where he lost his job and now finds himself uninsured and [unable to] afford [his] medications."  (Tr. 263).  Plaintiff reported that as a result he was taking "benzodiazepines off the streets" and was also taking "Vicodin for his back pain."  (Tr. 263).  The doctor provided Plaintiff with medication despite his lack of insurance.  (Tr. 263).

On August 19, 2008, Plaintiff was examined by Dr. Zethelius.  (Tr. 261-62).  Plaintiff stated to the doctor that he "wants benzodiazepines."  (Tr. 261).  The doctor noted, however, that Plaintiff "does have a history of substance abuse and I am reluctant to use medications that are habit forming."  (Tr. 261).  The doctor instead discussed with Plaintiff "different treatment options" which Plaintiff "refus[ed]."  (Tr. 261).

On January 20, 2009, Plaintiff was examined by Dr. Zethelius.  (Tr. 257-58).  The doctor observed that Plaintiff "appears to be suffering from significant anxiety."  (Tr. 257).  The doctor also observed that Plaintiff again was covered by health insurance and his medication regimen was modified.  (Tr. 257).

On June 23, 2009, Plaintiff was examined by Dr. Zethelius.  (Tr. 282-83).  Plaintiff reported that he was experiencing anxiety, but also reported that he has been "drinking alcohol" and "smoking some marijuana."  (Tr. 282).  Plaintiff also reported that he discontinued taking some of his prescribed medications.  (Tr. 282).  Plaintiff's medication regimen was modified.  (Tr. 282).  On October 30, 2009, Plaintiff was examined by Dr. Zethelius.  (Tr. 268-69).  Plaintiff reported that he was not taking his prescribed medication and was using "some" marijuana.  (Tr. 268).

On January 29, 2010, Dr. Chukwuemeka Efobi completed an assessment of Plaintiff's ability to perform mental work-related activities.  (Tr. 285-87).  The doctor reported that Plaintiff experienced "moderate" limitations with respect to his ability to: (1) understand, remember, and carry out complex instructions; (2) make judgments on complex work-related decisions; (3) interact appropriately with supervisors; (4) interact appropriately with coworkers; and (5) respond appropriately to usual work situations and to changes in a routine work setting.  (Tr. 285-86).  The form that the doctor completed defined moderate as "there is more than a slight limitation in this area but the individual is still able to function satisfactorily."  (Tr. 285).  The doctor reported that Plaintiff experienced "mild" limitations with respect to his ability to: (1) make judgments on simple work-related decisions; and (2) interact appropriately with the public.  (Tr. 285-86).  The form that the doctor completed defined mild as "there is a slight limitation in this area, but the individual can generally function well."  (Tr. 285).  Finally, the doctor reported that Plaintiff experienced no

7

limitations in the following areas: (1) ability to understand and remember simple instructions; and (2) ability to carry out simple instructions. (Tr. 285).

On July 9, 2010, Dr. Zethelius completed an assessment of Plaintiff's ability to perform mental work-related activities. (Tr. 309-12). The doctor reported that Plaintiff experienced "marked" limitations with respect to his ability to: (1) relate to coworkers; (2) deal with the public; (3) interact with supervisors; and (4) deal with work stresses. (Tr. 309). The form that the doctor completed defined marked as "limitations that seriously, but not completely, interfere with the ability to function independently, appropriately and effectively on a sustained basis." (Tr. 309).

The doctor reported that Plaintiff experienced "moderate" limitations with respect to his ability to: (1) maintain attention/concentration; (2) behave in an emotionally stable manner; (3) relate predictably in social situations; and (4) demonstrate reliability. (Tr. 309-10). The form that the doctor completed defined moderate as "limitations that result in satisfactory but limited function." (Tr. 309). The doctor reported that Plaintiff experienced "mild" limitations with respect to his ability to: (1) follow work rules; (2) use judgment; (3) function independently; (4) carry out complex job instructions; and (5) carry out detailed but not complex job instructions. (Tr. 309). The form that the doctor completed defined mild as "limitations that do not significantly limit a person's ability to perform most jobs." (Tr. 309). Finally, the doctor reported that Plaintiff experienced no limitations in his ability to understand, remember and carry out simple job instructions. (Tr. 309).

8

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]   If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.  While the burden of proof shifts to the Commissioner at step five of the sequential process, Plaintiff bears the burden of proof through step four, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v.*

---

[2] 1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

*Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) anxiety, (2) depression, (3) history of substance abuse, and (4) bi-polar disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 15-17).  With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the physical ability to perform work at all exertional levels.  (Tr. 17).  The ALJ further determined, however, that Plaintiff was subject to the following non-exertional limitations: (1) he can understand, remember, and carry out only unskilled work that involves only simple, repetitive, routine, and predictable tasks, (2) he can only work in an environment with low stress, i.e., not fast-paced, and (3) he can only intermittently interact with the general public, co-workers, or supervisors. (Tr. 17).

The ALJ concluded that Plaintiff was unable to perform any of his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly,

10

ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Joanne Pfeffer.

The vocational expert testified that there existed approximately 51,900 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 44-46). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act.

Plaintiff initiated the present action without benefit of counsel. On November 30, 2011, the Court entered an Order directing Plaintiff that his initial brief was to be filed no later than January 4, 2012. (Dkt. #8). Plaintiff has failed to submit any brief or pleading in support of his request for relief. Plaintiff has likewise failed to request an extension of time to submit a brief or pleading or communicate with the Court in any manner. Plaintiff's failure to prosecute this action is sufficient grounds, by itself, to recommend that his appeal be rejected. *See* Fed. R. Civ. P. 41(b); *see also*, *Hall v. White*, 1987 WL 37304 at *1 (6th Cir., May 8, 1987) (citing *Link v. Wabash Railroad*, 370 U.S. 626 (1962)) ("a federal court has the authority to dismiss a case sua sponte with prejudice under Rule 41(b) for failure to prosecute"); *LeSane v. Hall's Security Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (same).

Nevertheless, the Court has thoroughly reviewed the record to determine whether the ALJ's decision suffers from any obvious defects or deficiencies. This review reveals nothing which

calls into question the ALJ's decision making process, the legal standards she applied, or the substantiality of the evidence in support of her decision. Accordingly, the Court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence.


## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  July 30, 2012                              /s/ Ellen S. Carmody
                                                 ELLEN S. CARMODY
                                                 United States Magistrate Judge

12